IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHILA ZAYANDEROUDI, | * | |
| Plaintiff, | * | |
| v. | * | Case No. TJS-22-2455 |
| NATIONAL RAILROAD PASSENGER CORPORATION, | * | |
| | * | |
| Defendant. | | |
| * * * * * * | | |

**MEMORANDUM OPINION**

Pending before the Court is the "Motion to Stay Proceedings and Petition for Order to Arbitrate" (ECF No. 17) filed by Defendant National Railroad Passenger Corporation ("Amtrak").[1] Having considered the parties' submissions (ECF Nos. 17, 18 & 19), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, Amtrak's Motion will be granted, the case will be stayed, and Plaintiff will be ordered to submit this dispute to arbitration.

**I.     Background**

In her Complaint, Plaintiff alleges that she was a passenger on Amtrak train number 189 from New York City to Maryland on October 31, 2021. ECF No. 1. ¶ 8. She alleges that when the train arrived at the New Carrollton Amtrak Station in Prince George's County, Maryland, the train stopped and the doors opened to allow the passengers to disembark. *Id.* ¶ 9. As Plaintiff was stepping off the train, "the train suddenly and without warning jerked forward, causing Plaintiff to fall out of the train and onto the platform." *Id.* ¶ 10. Plaintiff alleges that she was injured. *Id.* ¶ 12.

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 16.

The case was directly assigned to me under the Court's Standing Orders 2023-01 and 2019-07. The Case Management Order (ECF No. 3) provided that the "time to file any preliminary motion is tolled until such time that consent is obtained from all parties or the case is reassigned to a District Judge." ECF No. 3. The Case Management Order also prohibited the parties from filing any motion without first obtaining permission from the presiding judge. *Id.* On October 26, 2022, Amtrak filed a motion to stay proceedings and petition for order to arbitrate, which the Court denied on October 27, 2022, for violating the Case Management Order. ECF Nos. 11 & 12. The Court explained that its order was "without prejudice to the Defendant's right to renew the motion at the appropriate time." ECF No. 12.

On November 2, 2022, the Clerk of Court confirmed that the case was assigned to me for all proceedings by the parties' consent, pursuant to 28 U.S.C. § 636(c). ECF No. 16. Then, on November 7, 2022, Amtrak filed the instant Motion. It is now fully briefed and ripe for decision.

## II.     Legal Standard

Amtrak argues that Plaintiff's "lawsuit cannot proceed in this forum because all claims that Plaintiff asserts against Amtrak are subject to binding, contractual arbitration" under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* ECF No. 17-1 at 1, 4. Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A party to an arbitration agreement may ask the Court "to move . . . an arbitrable dispute out of court and into arbitration" by either staying the litigation or compelling arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (citing 9 U.S.C. §§ 3–4). The Court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500

(4th Cir. 2002). Accordingly, the Court engages "in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (stating a motion to compel arbitration "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues").

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477-78 (D. Md. 2012). When the validity of an arbitration agreement is in dispute, as here, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 233 (4th Cir. 2019) ("To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test."). "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 233. The moving party bears the burden of establishing that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The FAA embodies the strong federal policy that arbitration agreements be rigorously enforced. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

**III.    Discussion**

To prevail on a motion to compel arbitration, a party must show

(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate

3

or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation[.]" *Levin v. Alms & Assocs.*, 634 F.3d 260, 266 (4th Cir. 2011). "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). Still, the "FAA's policy of favoring arbitration augments ordinary rules of contract interpretation[] and requires all ambiguities to be resolved in favor of arbitration." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 682–83 (4th Cir. 2020) (internal quotation marks and citations omitted).

Unless stated otherwise, the following facts are undisputed.

A.     **The Parties' Arbitration Agreement**

Plaintiff bought the ticket that she used for her October 21 train fare on September 21, 2021. ECF No. 17-1 at 2. On that date, Amtrak was using "Version 2.9.10 of its Terms and Conditions, which was issued on September 14, 2021." *Id.* at 3, ECF No. 17-2 (copy of Terms and Conditions). The first paragraph of the Terms and Conditions notified Plaintiff that a binding arbitration agreement is contained within the Terms and Conditions:

> These terms and conditions contain a binding <u>Arbitration Agreement below</u>. Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial. By purchasing a ticket for travel on Amtrak, You are agreeing to these terms and conditions and agreeing to the Arbitration Agreement.

ECF No. 17-2 at 2 (emphasis in original).

The Arbitration Agreement referenced at the beginning of the Terms and Conditions, and which is contained within the same document, states:

> Mutual Agreement to Arbitrate ("Arbitration Agreement"). This Arbitration Agreement is intended to be as broad as legally permissible, and, except as it otherwise provides, applies to all claims, disputes, or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration. Amtrak and Customer (on behalf of yourself and any individuals for whom you purchase tickets, including, without limitation, family members, minor passengers, colleagues and companions (collectively "You" or "Your"), AGREE that this Arbitration Agreement applies, without limitation, to claims Amtrak may have against You and claims You may have against Amtrak and any affiliates or related entities, or against any party to which Amtrak owes indemnity (which party may also enforce this Agreement), including without limitation any host railroad, based upon or related to: these Terms and Conditions, breach of contract, **tort claims, common law claims,** Your relationship with Amtrak, tickets, **services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, any personal injuries** (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury), and any claims for discrimination and failure to accommodate, which shall be decided by a single arbitrator through binding arbitration and not by a judge or jury. Except with respect to the Class Action Waiver below, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. This Arbitration Agreement is governed by the Federal Arbitration Act ("FAA") and evidences a transaction involving commerce.

ECF No. 17-2 at 57-58 (emphasis added).

### 1. Plaintiff's Assent

Amtrak argues that Plaintiff "unequivocally assented to the Arbitration Agreement by clicking on Amtrak's website that she read and agreed to its Terms and Conditions, including the Arbitration Agreement on September 21, 2021." ECF No. 17-1 at 7; *see also* ECF No. 19 at 11 ("The Agreement was a click-wrap agreement whereby Plaintiff accepted the terms of the arbitration agreement when she clicked the box that said she read and agreed to the terms and conditions regarding binding arbitration."). Amtrak explains that a "'click-wrap' agreement, such

as this one, prevents a user from proceeding in the ticket purchase unless and until they specifically select or 'click' a box manifesting their assent." *Id.* Because Plaintiff was required to agree to Amtrak's Terms and Conditions in order to purchase her ticket, Amtrak argues that "Plaintiff could not have purchased her ticket without taking the step of actively manifesting her assent." *Id.*

Courts in this district have routinely upheld similar "click-wrap" agreements. *Wilson v. Uber Techs. Inc.*, No. DKC 19-2363, 2020 WL 2732086, at *3 (D. Md. May 26, 2020); *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) ("Courts applying Maryland law have upheld clickwrap agreements."); *Fusha v. Delta Airlines, Inc.*, No. RDB-10-2571, 2011 WL 3849657, at *2 (D. Md. Aug. 30, 2011); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009). The Court finds that Plaintiff unequivocally assented to Amtrak's Terms and Conditions, including the Arbitration Agreement, when she bought her ticket. Plaintiff has presented no evidence or argument to suggest otherwise.

### 2. Scope of Arbitration Agreement

Amtrak argues that Plaintiff's claim falls within the scope of the Arbitration Agreement. Amtrak notes that the Arbitration Agreement delegates to the arbitrator the "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable." ECF No. 17-1 at 9-10 (quoting ECF No. 17-2 at 57-58).

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (explaining that "if a valid agreement exists, and if

the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue").

The Court finds that the Arbitration Agreement clearly and unmistakably delegates questions of the scope of arbitrability to the arbitrator. Under the Arbitration Agreement, the arbitrator has the sole authority to resolve questions relating to whether the Arbitration Agreement is valid, applicable, enforceable, unconscionable, whether it has been waived, and whether it is void or voidable, in whole or in part. ECF No. 17-2 at 57-58.

Because the Court has determined that Plaintiff agreed to arbitrate the dispute at issue here, and because the dispute is subject to arbitration under the Arbitration Agreement, the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

### 3.     Plaintiff's Arguments

Before addressing Plaintiff's arguments, the Court notes what Plaintiff does not place in dispute: she was required to affirmatively click on a box establishing her assent to be bound by the Arbitration Agreement before buying her ticket; she actually clicked on the box and purchased her ticket; the Arbitration Agreement is part of the Terms and Conditions associated with the ticket; the Arbitration Agreement contains a broad delegation clause that clearly and unmistakably delegates issues of arbitrability to the arbitrator; and, Plaintiff's claims fall within the scope of the Arbitration Agreement.

### a.    Unconscionability

Plaintiff argues that the Arbitration Agreement is not valid because it is unconscionable. ECF No. 18 at 7. "An unconscionable bargain or contract has been defined as one characterized by extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." *Walther v. Sovereign Bank*, 386 Md. 412, 426, 872 A.2d 735, 743 (2005) (internal quotation marks omitted). "[A] contract is unconscionable only if it is both procedurally and substantively unconscionable." *Mould v. NJG Food Serv. Inc.*, 986 F. Supp. 2d 674, 678 (D. Md. 2013).

The Court finds that the Arbitration Agreement is not unconscionable. First, the Arbitration Agreement contains a mutual exchange of promises to arbitrate. Second, nothing in the Arbitration Agreement resembles substantive unconscionability as it has been described by other courts. Third, Plaintiff was required to accept the Arbitration Agreement before buying her ticket; she was not required to agree to it after she bought the ticket or after her journey had begun. Fourth, Plaintiff had alternative travel options between New York City and Maryland, which would not have required her to agree to Amtrak's Arbitration Agreement. Still, Plaintiff chose to purchase a ticket from Amtrak and is therefore required to abide by the Arbitration Agreement.

### b.    Waiver of Right to Jury Trial

Plaintiff argues that Amtrak cannot show that she knowingly and voluntarily agreed to waiver her right to a jury trial. ECF No. 18 at 9-10. The Court rejects this argument. Plaintiff was required to affirmatively click the box manifesting her assent to the Terms and Conditions (including the Arbitration Agreement) before buying her ticket, and such "click-wrap" agreements are fully enforceable. The Court rejects Plaintiff's unfounded contention that Amtrak or any other party needed to ensure that Plaintiff understood that, by agreeing to arbitration, she was waiving

important rights guaranteed to her under the Seventh Amendment. Plaintiff's argument runs contrary to the strong federal and state policies that favor arbitration.

### c. Illusory Promise

Plaintiff claims that the Arbitration Agreement is "an illusory promise based on unfettered discretion." ECF No. 18 at 10. She points to language in the Terms and Conditions that allows Amtrak to modify the terms regarding upgraded seats. *Id.* She concedes that "[a]lthough this statement is made in a section discussing upgraded tickets, the phrase could be read to apply to . . . the arbitration provision." *Id.* at 10-11. Of course, the Court does not interpret contracts hoping to make them inconsistent with their own terms. Looking at the terms of the Arbitration Agreement itself, there is no illusory promise, as Plaintiff claims. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005) ("[L]ooking at the four corners of the separate Arbitration Agreement, the agreement contains no such illusory promise."). For these reasons, the Court rejects Plaintiff's argument on this point.

### d. Waiver of Arbitration

Plaintiff argues that Amtrak waived its right to arbitration by filing its Answer before it filed its Motion. ECF No. 18 at 11-12. As explained above, this case was subject to a Case Management Order that prohibited Amtrak from filing any motion until it was permanently assigned to a district or magistrate judge. Amtrak diligently asserted its right to seek arbitration within a week of the case's assignment to me for all proceedings under 28 U.S.C. § 636(c). The Court finds that Amtrak has not knowingly relinquished its right to arbitrate this dispute and rejects Plaintiff's argument as meritless.

### e. Discovery

Plaintiff argues that if the Court does not deny Amtrak's Motion, it should at least allow her the opportunity to take "limited discovery on the arbitration provision, followed by an evidentiary hearing." ECF No. 18 at 13. Of course, because the Court has determined that the Arbitration Agreement is valid and binding on the parties, and that Plaintiff's claims are subject to arbitration (or at least that it is for an arbitrator to make that determination), the Court has no discretion to allow the parties to undertake discovery. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (stating a motion to compel arbitration "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues"). Even so, it is unclear what meaningful discovery Plaintiff might take. She was the person who bought the ticket and agreed to Amtrak's Terms and Conditions. If Plaintiff wonders whether she "knowingly, voluntarily and intelligently" agreed to the Arbitration Agreement or any other matter, she ought to ask those questions of herself and not Amtrak. And because the terms of the Arbitration Agreement are unambiguous, whether Amtrak believes that they mean anything other than what the Court has determined their plain meaning to be, it is immaterial to the Court's decision.

## IV. Conclusion

For all these reasons, Amtrak's Motion (ECF No. 17) is **GRANTED**. By separate Order, this case will be stayed. Plaintiff will be ordered to submit her claims to arbitration, pursuant to the terms of the Arbitration Agreement, within 14 days.

Date: July 25, 2023                          /s/
                                   Timothy J. Sullivan
                                   United States Magistrate Judge